HEIRS OF JUAN TOMÁS ORTIZ ROBLES, ETC., Plaintiffs and Appellees-appellants, v. ARTURO RAMÍREZ, ETC., Defendant and Appellant-appellee.

No. 9497. Argued November 13, 1947.—Decided March 29, 1948.

*R. Rivera Zayas, G. Rivera Cestero,* and *José O. Sabater* for appellant-appellee. *Luis Mercader* for appellees-appellants.

Mr. Justice Snyder delivered the opinion of the Court.

The plaintiffs, heirs of Juan Tomás Ortiz Robles, sued the defendant for damages of $8,000 because Ortiz was killed by a público owned by the defendant. After a trial on the merits, the district court entered judgment for the plaintiffs in the amount of $3,500, costs and $150 as attorney's fees. The defendant appealed, alleging as errors that the court failed to find (1) that the accident was due to the negligence of the decedent and (2) that the sole and proximate cause of the accident was the contributory negligence of the decedent.

We summarize first the evidence offered by the plaintiffs. Emilio Hernández testified that he was driving a truck loaded with cane destined for Central Cambalache on the military road from Quebradillas to Arecibo; that Ortiz and a peón accompanied him; that he stopped the truck near a bridge in order to permit Ortiz, who was going to the Central Riollano on business, to alight; that Ortiz got out and went to the rear of the truck in order to cross the highway to reach the country road leading to the Central; that the público was coming in the opposite direction from Arecibo to Quebradillas at a speed of 45 to 50 miles; that he did not hear the horn of the público; that the público struck Ortiz and continued for 38 steps; that he did not know whether Ortiz came from behind the truck on to the road slowly or quickly, because he did not see him as he was inside

the truck; that the military road is 22 meters wide at that point; that the truck was parked more on the right bank of the road than in the middle; that the truck is about 6 feet wide; that before the público arrived in front of the truck he felt the driver putting his brakes on.

José Díaz Beitía, the peón, testified that during the crop season he worked with Hernández; that the público was coming at an exaggerated speed and was not blowing its horn; that Ortiz crossed the road at the rear of the truck; that he felt the blow when Ortiz was struck; that the público continued for 38 steps after it hit Ortiz; that he could not say in what manner Ortiz came from behind the truck because he did not see him; that 8 or 10 feet in front of the truck the público began to put its brakes on, while the truck was still parked; that as they saw a car coming they waited for it to pass in order to start afterwards.

Bienvenido Rodríguez testified that he was coming from Quebradillas to Camuy in a guagua loaded with coconuts; that he stopped the guagua ½ hectometer behind the truck in order to arrange his coconuts; that he saw Ortiz get out of the truck; that "when he got out he went behind the truck quickly; he was going very fast; then the público passed"; that he could not say at what speed the público was coming because it was coming in the opposite direction; that the público was going a little fast; that the público turned away, towards a palm tree, where it stopped; that Ortiz was going a little fast when he got out of the truck and went behind it; that he did not notice if Ortiz was looking to see if any car was coming; that Ortiz did not stop when he got behind the truck but continued running; that the truck was parked at the right; that there was sufficient space on the road for vehicles to pass; that he cannot say with exactitude if the car was going at an excessive speed; that he knew it was 38 steps because afterwards a policeman measured the tracks the público made; that Ortiz had tried to cross rapidly.

Gumersindo Hilera testified that he owned the guagua loaded with coconuts; that he saw nothing but only felt the brakes of the car. This completed the testimony for the plaintiffs, so far as the accident was concerned.

Daniel Fuentes Casiano, a chauffeur employed by the defendant, testified for the latter that he was driving the público on a trip from San Juan to Mayagüez at 10 a. m.; that as he was passing the scene already described he saw a truck parked on the right side of the road; that just as he was going to pass, the decedent came running from behind the truck; that although he tried to avoid him, he was unable to do so; that he blew his horn, as he usually does whenever he passes another car; that he was going 25 to 30 miles an hour; that in trying to avoid a collision with Ortiz, he turned away, went off the road and applied his brakes, but Ortiz ran into the left side of the público; that the wheels never came in contact with Ortiz; that Ortiz ran into the car and was struck by the left front part of the car and the portion of the windshield near the driver; that the place where he passed was 25 to 26 feet wide, measuring from the side of the truck to the end of the asphalt; that from the border of the truck until where the asphalt ends was 15 feet; that he stopped against the palm tree; that if he had tried to stop rapidly with his brakes, he and his passengers would have been catapulted from the car and five people would have been killed instead of one; that nothing prevented his seeing or driving freely before reaching the truck; that as he could pass he did not need to stop when he saw the parked truck; that he did not expect anybody to come from behind the truck; that he saw Ortiz for the first time when he was running from behind the truck and immediately put on his brakes.

Celia María Perdomo, a graduate nurse, testified that she was a passenger in the público; that she did not see the accident but felt the noise when the windshield broke and

the chauffeur turned the car and went toward the palm tree on the right; that the car was going slowly and not at a great speed.

Consuelo Vélez Quiñones, a secretary employed by the Water Resources Authority and also a passenger in the público, testified that it was going slowly or moderately and everyone was talking; that when the blow struck the chauffeur had put on the brakes and turned the car to the right toward the palm; that all this happened instantaneously; that from the place of the impact to the palm was approximately 4 or 5 meters; that if the chauffeur had kept going, he would have killed them all because there was a precipice ahead; that everything was so rapid that she cannot say whether the car turned away and the brakes were put on before or after she heard the blow; that she noticed the blow and immediately thereafter the putting on of the brakes and the turning toward the right; that it seemed to her that all these things occurred simultaneously.

Antonio Rivera Pérez testified that he is a corporal in the Army; that he was also in the público as a passenger; that when the driver saw the truck, he slowed down and blew his horn; that he saw a man come from behind the truck running; that the man ran into the público on the left side; that when the man ran into them, the chauffeur turned off the road and put on the brakes, all at the same time; that the car was going at the moderate speed of 30 or 35 miles; that when they stopped they were completely off the road; that the impact with the man came after they passed the truck; that when the man hit the car, the man remained behind and the car kept going; that the car stopped as a result of the braking but not instantaneously; that when the man ran into the público, the chauffeur was already trying to turn away; that there was sufficient space between the truck and the remainder of the road to permit the público to pass.

Cayita Bonelli de Santisteban, the fourth passenger, testified that she was sitting alongside the chauffeur; that the car was going at a moderate speed of not more than 25 or 30 miles an hour; that the chauffeur had to put on the brakes suddenly and turn to the right because a man ran from behind the truck without paying attention to anything; that the man ran into the car in spite of the fact that the chauffeur tried to avoid hitting him; that she does not remember if the chauffeur blew the horn; that the man ran into the windshield; that the truck was parked when she saw it; that the público was going very slowly; that the chauffeur reduced his speed and put on the brakes when he saw the man; that the man ran into the público because he was running when he came from behind the truck on to the road.

As always we are exceedingly reluctant to interfere with the findings of fact of the district court. But if the uncontroverted facts reveal no possible basis on which to sustain the judgment it cannot be permitted to stand as a matter of law. See *Matos* v. *Pabón,* 63 P.R.R. 855.

It is difficult to see on what basis the lower court found that the público was travelling at an excessive speed when the accident occurred. The driver of the truck and the peón did testify to that effect. But they were obviously witnesses who were inclined to favor the plaintiffs. The driver of the guagua, which was parked behind the truck, was a witness produced by the plaintiffs. But he had no interest in the case. And he testified that he could not give the speed of the público as it was coming in the opposite direction. By the same token, it was equally difficult for the driver and the peón, seated in the truck, to estimate the speed of the público, coming in the opposite direction. On the other hand, all the passengers in the público, who could have no possible interest in exculpating the owner of the público from liability and who had the best opportunity to judge the speed

of the público, testified that it was being driven at a moderate speed.

But even if we accept the finding of the lower court that the chauffeur was driving the público at an excessive speed and that he failed to blow his horn as he passed the truck,[1] we cannot agree that his alleged negligence was the exclusive cause of the accident. The chauffeur and the peón, who were seated in the truck, testified truthfully to an obvious fact: they were seated in the truck and therefore could not see in what manner the decedent came from behind the truck on to the road. But the driver of the parked guagua, a witness for the *plaintiffs*, said over and over again that Ortiz came out fast, and that he was running. This important testimony was confirmed by all the passengers in the público who testified repeatedly and most emphatically that Ortiz did not look to see where he was going, but darted from behind the truck on to the road; and that he ran into the público, although the chauffeur by putting on his brakes and turning off the road made every effort to avoid hitting him.

Even if we assume negligence on the part of the driver of the público because he was speeding and failed to blow his horn, we are satisfied from the testimony adduced by the plaintiffs—as well as the defendant—that the negligence of Ortiz in running out into the road and running into the público was a contributory factor in this accident. His heirs therefore cannot recover damages for his death. *Gottstein* v. *Daly,* 7 P. (2) 610 (Wash., 1932); *Farrar* v. *Koontz,* 16 N.E. (2) 829 (Ohio, 1938); *Ortiz* v. *American Railroad Co.,* 62 P.R.R. 171, 187; *Maldonado* v. *Hamilton,* 32 P.R.R. 208; *Meléndez* v. *Alvarez,* 35 P.R.R. 316.

---

[1] The driver and the peón, seated in the truck, testified that they heard no horn. The driver of the público and all his passengers, who were disinterested witnesses, testified that he sounded his horn. We accept the finding of the lower court on this point, although we confess we find it somewhat dubious. However, we fail to see why there was any duty on the car of the driver to blow his horn when passing a parked truck. See *Meléndez* v. *Alvarez,* 35 P.R.R. 316.

Although each negligence case is in final analysis bottomed on its own facts, in *De García* v. *Figueroa & Gautier*, 52 P.R.R. 865, affirmed in 102 F. (2) 148 (C.C.A. 1st, 1939), except for the irrelevant factor of speed, the facts were substantially similar to our facts. There the plaintiff attempted to cross the street in front of a parked car. But the defendant did not see her until it was too late because he was going in the same direction as the parked car was facing. Here the decedent could not be seen by the driver of the público because he was driving in the opposite direction as the decedent came on the road from the rear of the truck. In both cases, (p. 866) "at the very moment in which the defendant's car was travelling past the parked vehicle, the plaintiff stepped out and in front of defendant making it absolutely impossible for him to stop in time to avoid striking her, but that he realized the moment when . . . [he hit] . . . the plaintiff and then stopped the car . . .". See also *De la Paz* v. *White Star Bus Line*, 63 P.R.R. 659; *Matos* v. *Pabón, supra,* p. 864.

We have considered the possibility that despite the contributory negligence of Ortiz, the defendant might be liable because his chauffeur had the last clear chance to avoid the accident. This "doctrine presupposes a perilous situation created or existing through the negligence of both the plaintiff and the defendant, but assumes that there was a time after such negligence had occurred when the defendant could, and the plaintiff could not, by the use of means available, avoid the accident. It is not applicable if the emergency is so sudden that there is no time to avoid the collision, for the defendant is not required to act instantaneously." *Dean* v. *Century Motors,* 154 F. (2) 201, 202 (C.C.A., D.C., 1946); *Capital Transit Company* v. *Grimes,* 164 F. (2) 718 (C.C.A., D.C., 1947; *Miranda* v. *Porto Rico Ry., Lt. & P. Co.,* 42 P.R.R. 694; *Ayala* v. *Matías,* 54 P.R.R. 331; *E. Solé & Co.*

*v. American Railroad Co.,* 61 P.R.R. 727, 738; Annotation, 92 A.L.R. 47.[2]

But the evidence adduced by the parties forecloses this possibility. The record shows that immediately after Ortiz darted out into the road, the driver of the público had no reasonable opportunity to avoid hitting him. Indeed, as already pointed out, the público did not hit or run over Ortiz. On the contrary, the latter ran into the público. The plaintiffs therefore failed as a matter of law to show that Ortiz was killed due exclusively to the negligence of the agent of the defendant.

The judgment of the district court will be reversed and a judgment will be entered dismissing the complaint.

---

[2] See also 2 Restatement Torts §§ 479–80; Bohlen and Harper, Torts, § 138 *et seq.;* James, Last Clear Chance: A Transitional Doctrine, 47 Yale L.J. 704. For a criticism of the doctrines of contributory negligence and last clear chance in civil law jurisdiction, see MacIntyre, The Rationale of Last Clear Chance, 53 Harv.L.Rev. 1225.